# CASES DETERMINED.

## IN THE

# SUPREME COURT OF ARKANSAS

---

FRANKLIN LIFE INSURANCE COMPANY *v.* AMERICAN NATIONAL

BANK.

## Opinion delivered January 21, 1905.

1. BENEFIT INSURANCE—NOTICE OF ASSESSMENT.—Where a by-law of a mutual insurance association required that notice of assessments due should be mailed to the address of the assured, an assignee of the policy took subject thereto, and was not entitled to notice. (Page 8.)

2. SAME—FAILURE TO PAY ASSESSMENT.—Where notice of the amount of an assessment and of the time when it was payable was given by mail in the manner prescribed by the by-laws of a mutual insurance company, failure of the assured to pay it when due, by the terms of the policy, operated as a forfeiture thereof. (Page 8.)
(Page 8.)

3. SAME—CONSTRUCTION OF STATUTE.—Rev. St. of Mo., 1889, § 5849, providing that no misrepresentation made in securing a policy of life insurance shall be deemed material or avoid the policy, unless it actually contributes to the contingency or event on which the policy is to become due, does not apply to Missouri assessment companies. *Williams* v. *St. Louis Life Ins. Co.* 71 S. W. 376, followed. (Page 8.)

4. POLICY—EFFECT OF BREACH OF WARRANTY.—Where an applicant for insurance warranted the statements and answers in his application to be true, and that, if false, the association should be liable to pay in full satisfaction of the policy only an amount equal to the actual reserve on the policy, the right to recover more than such reserve will be defeated by proof that such statements and answers were false and fraudulent. (Page 8.)

Appeal from Sebastian Circuit Court, Fort Smith District.

·STYLES T. ROWE, Judge.

*Read & McDonough,* for appellant.

There was a forfeiture of the policy for failure to pay the premiums. 93 U. S. 24; 23 S. E. 223; 19 Ill. App. 327; 41 Mo. App. 106. The insured is entitled to notice of the forfeiture, and not the beneficiary. 56 Pac. 116; 42 N. Y. Sup. 646; 28 N. J. L. 92. When a policy is assigned as collateral, the assured must pay the premium. 2 May, Ins. § 399a, 76 Ga. 575; 2 May, Ins. § § 378a, 382; 72 Mass. 169. The insured made a gross misrepresentation as to his habits upon the question of drink. 71 S. W. 376; 122 Mo. 50; 26 S. W. 680; 146 Mo. 523; 48 S. W. 462; 163 Mo. 132; 63 S. W. 400; 164 Mo. 675; 147 Mo. 561; 49 S. W. 553; 122 Mo. 50. Appellant was released from liability by the insured's excessive use of intoxicants. 58 Fed. 941; 131 N. Y. 485; 61 N. Y. 571; 53 N. E. 737; 111 Ill. 284.

BATTLE, J. The Merchants' Life Association of the United States was a mutual insurance company, organized on the assessment plan, under the laws of the State of Missouri. On or about the 19th of July, 1897, W. M. Feagle made written application to the Association for a policy of insurance on his life. Attached to this application was an agreement, in which, among other things, it was stipulated and agreed by Feagle as follows:

"I hereby agree, for myself and all parties who may have an interest hereunder, that all the foregoing statements and answers made by me are material, and I warrant them, together with all my answers made to the medical examiner of the Association in continuation of this application, to be true and complete, and they are made as the basis for the issuing of a policy of insurance on my life, for which I hereby apply.

"And I further agree that * * * if I shall hereafter damage my health by the excessive use of opium, chloral, or any other narcotic as a habit, · * * * or have made any false or fraudulent statements in this application, or use alcoholic or malt liquors in excess of present use, as stated in part 1 of this application, or to such extent as to produce frequent intoxication, the said Association shall be released from said insurance, and shall

be liable only to he person or persons lawfully entitled thereto, in full satisfaction of said policy, an amount equal to the actual reserve on said policy."

The following questions and replies of Feagle thereto were contained in the application:

"Do you use ardent spirits, wine or malt liquor?" He replied: "None." "If so, what kind, and the largest quantity in any day?" He answered: "None at all." "Do you use morphine, cocaine, chloroform, ether, or any other narcotic drug?" He answered: "No."

In consideration of the warranties and agreements contained in the application, the Merchants' Life Association of the United States issued the following policy:

"The Merchants' Life Association of the United States.

"Age 46................................Amount $2,000

General Offices, St. Louis, Mo.

"Operating under supervision of the Insurance Departments:

"In consideration of the first annual premium of thirty-five dollars and ninety-two cents, the written and printed application for this policy, and the payment of all premiums as stated in the insurance plan indorsed thereon, which application and plan was made a part of this contract.

"Does promise to pay Alice F. Feagle, wife of the insured, at the office of the Association in the city of St. Louis, State of Missouri, two thousand dollars within thirty days after receipt and approval by it of satisfactory proofs of the death of W. M. Feagle, of Denison, Texas, provided that if any premium called in accordance with said insurance plan shall not be paid on or before the day named in the notice for the payment thereof, this contract shall be void, but may be reinstated at any time according to the rules of the Association. In testimony whereof said Association hath this day caused the names of its president and secretary to be signed, and its corporate seal to be hereunto affixed at St. Louis, Mo., this nineteenth day of July, 1897.

(Signed)                    "W. H. Collins, President.
"Attest: J. S. Eggleston, Secretary."

On the 14th day of June, 1899, the Franklin Life Insurance Company delivered to Alice F. Feagle, the beneficiary in the policy, the following contract:

"Springfield, Ill., June 14, 1899.

"The Franklin Life Insurance Company of Springfield, Ill., hereby assumes under and according to the terms and conditions thereof policy No. 4104, issued by the Merchants' Life Association of the United States, July 19, 1897, to Warren M. Feagle, of Denison, Texas, for $2,000, payable to Alice F. Feagle.

(Signed)            "Alfred Orendorff, President.

"T. C. Rosenberry, Secretary."

On the 7th day of May, 1900, Alice F. Feagle and W. M. Feagle assigned the policy to the American National Bank, of Fort Smith, as collateral security for the loan of fifty dollars advanced to them on their joint promissory note subject to the conditions of the policy and the rules and regulations of the company.

W. M. Feagle departed this life on the 20th of November, 1900; and the American National Bank and Alice F. Feagle brought this action against the Franklin Life Insurance Company upon the policy of insurance to recover the amount thereof, the sum of $2,000.

Evidence was adduced in the trial of this action tending to prove the following facts:    That no premiums were paid by W. M. Feagle, the assured, after the 15th day of April, 1900; that a premium became due on the policy on the 15th day of July, 1900, amounting to $9.32; that it was called in accordance with the insurance plan of the Merchants' Life Association of the United States, indorsed upon the policy, and notice of it was given to the insured by mailing it at Springfield, Illinois, on the 15th day of June, 1900, duly sealed and United States postage paid, and addressed to W. M. Feagle, at Fort Smith, Arkansas, that being his last known address.   This was in compliance with the by-laws of the Association.   He failed to pay the premium of $9.32, and never afterwards paid any premium on the policy.   The policy was forfeited, and was so marked on the records of the Franklin Life Insurance Company.   He never made any application to be reinstated in the company.

No notice of the premium falling due on the 15th of July, 1900, was given to either of the plaintiffs.   There was no provision or article or by-laws of the said Merchants' Life Association, or the Franklin Life Insurance Company, or any contract between

said parties, or any of them, requiring said companies, or either of them, to give any notice to the assignee of said policy, or to the beneficiary thereunder, regarding premiums or assessments to be paid on said policy, or any notice of any kind relative to said premiums or assessments. It had never been the habit or custom of either of said companies to give notices of premiums or assessments, or that default had been made in the payment of premiums or assessments, to any assignee of the policy or any beneficiary thereunder, or to any one except the insured who was a member of the Association. The by-laws af the Merchants' Life Association required it to be given by mail to the insured.

Evidence was also adduced tending to prove the following facts: A long time prior to and at the time the application for insurance was made by Feagle, "he had been, and was, addicted to the habit of using morphine and strong drink, and to the use of ardent spirits, wine and malt liquors, to excess; and after the issuance of the policy continued to use alcoholic and malt liquors to such an extent as to produce frequent intoxication, in violation of his covenant and agreement."

The court, over the objection of the defendant, instructed the jury, in part, as follows:

"That the American National Bank, being the owner of the legal title to the policy by virtue of the assignment to it, was entitled to notice of the maturity of premium calls; and if no notice of the premium calls that fell due after the assignment was given it, then the defendant cannot claim the forfeiture of the policy on that ground, although it may have given notice to W. M. Feagle."

"The defendant defends against recovery on the policy on the ground that Feagle made certain representations as to his use of liquors or drugs, and as to his future use of them, and that such representations were untrue and not carried out. The court tells you that this policy is a Missouri contract, and is governed by the laws of that State in force when it was issued. The statutes of Missouri in force at that time read: 'Sec. 5849 (Revised Statutes, 1889). No misrepresentation made in the obtaining or securing a policy of insurance on the life or lives of any person or persons shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due

and payable; and whether it so contributed in any case is a question for the jury.' Now, if you find that any of his representations at the time of the issuance was untrue, or if any of his warranties as to the future use of drugs or liquors was broken, yet that will not avoid the policy, unless such use of liquors or drugs is shown by a fair preponderance of the evidence to have contributed to cause his death, or unless you find, from a preponderance of the evidence, that such representations or warranties were willfully fraudulent."

And the court refused to instruct the jury, at the request of the defendant, as follows:

"The court instructs the jury that it is provided in the policy of insurance sued on in this case that, if any premium, called in accordance with said insurance plan, shall not be paid on or before the day named in the notice for the payment thereof, this contract shall be void, but may be reinstated at any time, according to the rules of the Association. If, therefore, you find from the evidence that a premium was due on said policy, amounting to the sum of $9.32, on the 15th day of July, 1900, and that said premium was called in accordance with said insurance plan, that is to say, that a notice, stating the amount and component parts thereof, was mailed at Springfield, Illinois, to the said W. M. Feagle at Fort Smith, Arkansas, postage prepaid; and that the said W. M. Feagle did not pay or cause to be paid said premium of $9.32 to said company, on or before the 15th day of July, 1900, then you shall find for the defendant; unless you shall further find from the evidence that the said W. M. Feagle was thereafter reinstated according to the rules of said Merchants' Life Association of the United States."

"The court further instructs the jury that, if the said W. M. Feagle, in his application for said policy of insurance read to you in evidence, did agree for himself and all parties who might have an interest thereunder that all the statements and answers made by him in said application were material, and that he did warrant them, together with all his statements made to the medical examiner of the Association in continuation of his application, to be true and complete, and that they were made as a basis for the issuing of said policy of insurance, and if you further find that the said W. M. Feagle did further agree in said application that if he should hereafter, that is to say, after the issuance of said policy

of insurance, use alcoholic and malt liquors in excess of present use as stated in part 1 of said application, or to such extent as to produce frequent intoxication, the said Association should be released from said insurance, and should be liable only to pay to the person or persons lawfully entitled thereto, in full satisfaction of said policy, an amount equal to the actual reserve on said policy, then the court instructs you that said agreements were warranties, and must have been strictly complied with by the said W. M. Feagle during his life.".

"And if you should further find that the said W. M. Feagle in answer to question 42 in part 1 of said application, which said question is as follows: 'Do you use ardent sprits, wine or malt liquors?' answered, 'None;' and in answer to question 43: 'If so, what kind, and largest quantity in any day?' he answered, 'None at all;' and if you find that, after the issuance of said policy of insurance, said W. M. Feagle did become addicted to the use of alcoholic or malt liquors, or did use either of the same to such extent as to produce frequent intoxication, then the court instructs you that such use of alcoholic or malt liquors, or either of them, was a violation of said warranty, which rendered said policy void; and the plaintiffs herein cannot recover thereon any sum whatever; unless you find from the evidence that there was some amount due as an actual reserve on said policy."

"The court instructs you that, if you find from the evidence that said W. M. Feagle agreed in his application for said policy that the statements and answers made by him therein were material, and that he warranted them to be true and complete, and that they were made as a basis of the issuance of said policy of insurance, and that he did further agree in said application that if any of said statements so made by him in said application were false or fraudulent statements, then the Association should be released from said insurance, and should be liable only to pay the person or persons lawfully entitled thereto, in full satisfaction of said policy, an amount equal to the actual reserve on said policy; and if you further find that to the question 42 in part 1 of said application: 'Do you use ardent spirits, wine or malt liquor?' said W. M. Feagle answered, 'None;' and if to question 43 in part 1 of said application: 'If so, what kind and largest quantity in any day?' the said Feagle answered, 'None at all;' and if you further find from the evidence in the case that

the answers so made by the said Feagle to said questions 42 and 43, or to either of them, were false, the court instructs you that the false answers so made by the said W. M. Feagle were a breach of his said warranty; and that the plaintiffs cannot recover upon said policy; unless you should further find from the evidence that there is some amount of actual reserve due on said policy."

The jury returned a verdict in favor of the plaintiffs for $2,000; judgment was rendered accordingly; and the defendant appealed.

There was no duty resting upon the appellant to give notice to the American National Bank that a premium on the policy had fallen or would fall due. The policy was assigned to the bank only as collateral security for the payment of a small sum. The duty still rested upon the insured to pay the premiums. The by-laws of the Association required such notices to be given to him. The policy was assigned to it, subject to the rules and regulations of the company. It took the policy subject to the by-laws of the company, and was not entitled to notice. *Rowe* v. *Brooklyn Life Ins. Co.*, 42 N. Y. Sup. 646; *Lycoming Fire Ins. Co.* v. *Storrs*, 97 Pa. St. 354, 360; *Grant* v. *Alabama Gold Life Ins. Co.*, 76 Ga. 575, 581.

Notice of the premium and the time when it was payable having been given by mail in the manner prescribed by the by-laws of the company, the ·failure to pay it when due forfeited the policy. It was all the notice that the insured, or those claiming under him, were entitled to under his contract. *Survick* v. *Valley Mutual Life Assn.*, 23 S. E. 223; *Weakly* v. *Northwestern etc. Assn.*, 19 Ill. App. 327; *Forse* v. *Supreme Lodge Knights of Honor*, 41 Mo. App. 106. The court erred in giving the instruction as to notice.

The court erred in giving section 5849 of Revised Statutes of Missouri, 1889, in charge to the jury. The Merchants' Life Association was organized on the assessment plan, according to the laws of Missouri, and such companies were not subject to that statute. *Williams* v. *St. Louis Life Ins Co.*, (Mo.) 71 S. W. Rep. 376.

The request of the appellant for instructions as to the agreement and warranties as to the use of alcoholic and malt liquors

should have been granted. According to the terms of the contract, in pursuance of which the policy sued on was issued, the right to recover in this action may be defeated by the breach thereof.

Reverse and remand for a new trial.

McCULLOCH, J., did not participate.